## HAGOP S. SURMEIAN *vs.* C. C. SIMONS.

### JULY 8, 1919.

PRESENT:  Parkhurst, C. J., Sweetland, Vincent, Baker, and Stearns, JJ.

*(1)  Negligence.  Lights on Vehicles.  Causal Relation.*

Where plaintiff's carriage was struck from behind by defendant's automobile, as a matter of law a special finding that plaintiff was acting in disregard of Pub. Laws, 1914, cap. 1028, requiring every vehicle to display a light between certain hours is not conclusive upon the question of his right to recover.  The absence of lights may have or may not have a causal relation to the collision, depending upon the condition of the light in the highway in the neighborhood of the place of the accident.

*(2)  New Trial.  Reviewing Decision of Trial Judge.*

The finding of the trial judge upon the validity of a jury's verdict is not binding upon the appellate court but the court will examine the transcript of evidence and if it appears that the determination of the trial judge upon the weight of the evidence was clearly wrong or that his decision was not made upon conflicting testimony but was based upon a misconception of the evidence his decision will not be approved; but in the ordinary case where such justice has approved or set aside a verdict in accordance with his view as to the value of evidence clearly conflicting his determination will be regarded as of great persuasive force.

Following the rule established in *Wilcox* v. *R. I. Co.,* 29 R. I. 292, and *Mc-Mahon* v. *R. I. Co.,* 32 R. I. 237.

*(3)  New Trial.  Constitutional and Statutory Jurisdiction of Supreme Court.*

When the evidence before a jury is conflicting upon the issues, a review of the decision of the justice presiding either approving or setting aside the verdict is not a question of law.  Such review does not come before the appellate court by virtue of the constitutional provision giving it final revisory and appellate jurisdiction upon all questions of law and equity, but its jurisdiction is entirely statutory, conferred as part of the procedure by which a party may test the validity of a jury's verdict.

VINCENT, J., dissents.

Trespass on the Case for negligence. Heard on exceptions of defendant and overruled.

Sweetland, J.   This is an action of trespass on the case to recover damages for injuries alleged to have been suffered by the plaintiff through the negligence of the defendant in the operation of an automobile.

The case was tried before a justice of the Superior Court sitting with a jury and resulted in a general verdict for the defendant with a special finding adverse to the plaintiff. The plaintiff filed his motion for a new trial which was granted by said justice. The case is before us upon the defendant's exception to the decision of said justice granting a new trial.

It appears that at about ten o'clock on the night of August 14, 1917, the plaintiff was driving a two seated carriage upon Elmwood avenue in the town of Warwick; that he was proceeding toward the north and was upon the extreme easterly side of the traveled part of the road; that when he had reached a point near the intersection of Pawtuxet avenue with Elmwood avenue, about one third of a mile south of the bridge over which Elmwood avenue crosses the Pawtuxet river, his carriage was struck from behind without warning by an automobile operated by the defendant, who at that time was also proceeding northward on Elmwood avenue.  As a result of this collision the carriage of the plaintiff was injured, his horse was caused to run away, and the plaintiff claims that he received personal injuries.   At the time of the accident the plaintiff was alone in his carriage.  The defendant was accompanied in his automobile by three friends and was returning to Providence from a pleasure ride to East Greenwich.  Said night was warm, the weather was fair but the moon was not shining.   This part of Elmwood avenue is in a suburban district and is lighted by incandescent electric lights.   There is a conflict in the evidence as to the distance between said lights and as to the extent to which said lights illuminated the road on the night in question.

The defendant claims that the plaintiff was guilty of contributory negligence in that at the time of the accident he was driving said carriage in violation of the provisions of Chapter 1028, Pub. Laws, 1914. Said chapter, among other things, provides as follows: "Sec. 16. Every vehicle, when located or operated on any public highway or bridge shall display one or more lights on said vehicle so placed as to be visible both in the front and the rear, during the period from one hour after sunset to one hour before sunrise." Whether or not the plaintiff just before the accident did display one or more lights on his carriage so placed as to be visible from the front and the rear was one of the disputed issues in the case. The testimony on this point was conflicting; the jury found specially that the plaintiff did not. From an examination of the transcript of evidence we find some warrant for the plaintiff's claim that this was (1) treated by the defendant during the trial as the controlling issue. The plaintiff further contends that, notwithstanding the instruction of the justice, the jury acted under the misapprehension that their special finding upon this point was determinative of the case. As a matter of law the finding that the plaintiff was acting in disregard of the statute is not conclusive upon the question of his right to recover. The purpose of the statutory provision is plain, viz., to apprise travelers, between the hours named, of the presence and location of vehicles upon public highways and bridges. In case of a collision during those hours between a traveler who is complying with the statute and a vehicle not displaying one or more lights, if such traveler is exercising reasonable care and the collision is due to ignorance on his part of the presence of said unlighted vehicle in the dark highway, then the absence of such light or lights may be considered as an efficient and immediate cause of the collision and the fact of the violation of the statute is evidence of negligence on the part of the driver of the unlighted vehicle. If however the collision between such traveler and the unlighted vehicle occurs in the nighttime upon a highway which is

itself so well lighted that the unlighted vehicle can be plainly seen by other travelers then the fact of the violation of the statute is immaterial in the consideration of the negligence of the respective parties, because the absence of lights upon the vehicle had no causal relation to the collision. Therefore the condition of the light in the highway in the neighborhood of the place of the accident in question became a material matter in the consideration of the case. According to the testimony of some of the witnesses who, as far as the record discloses, are disinterested said highway was so light that at the point in question the defendant if he had been exercising reasonable care could not have failed to see the carriage of the plaintiff in front of him in ample time to have avoided it. Witnesses for the defendant testified that at the time and place of the accident the highway was dark so that the carriage of the plaintiff could not be seen by the defendant until he was so close to it that the collision could not be prevented.

Upon the motion of the plaintiff for a new trial there was presented to the judge who presided with the jury the question of whether the jury's verdict did justice between the parties. He was to pass upon that question after a review of the evidence and a consideration of where lay the fair preponderance of the evidence upon the issues in the case applying in such consideration his conclusions as to the credibility of witnesses and the value which should be placed upon their testimony. When a justice presiding has decided such a motion adversely to a verdict we must assume that he has reached his conclusion in the manner which we have outlined and that he finds the verdict to be unjust; unless it shall appear in his decision that his determination is based upon other considerations. We have held that the question of the weight of evidence and the credibility of witnesses is not for the trial judge upon a motion to direct a verdict; but upon the consideration of a motion for a new trial the determination of these questions is presented to him and it is his duty to pass upon them for in that way alone can such

justice exercise the function of reviewing the jury's verdict which has been placed in him by the statute.

The defendant contends that the preponderance of the evidence supports the verdict and that in setting it aside said justice has usurped the functions of the jury. In the consideration of an exception to the decision of a trial justice upon a motion for new trial this court has not adopted the position taken by courts of last resort in some states where the relation of the trial court to the appellate is similar to that which exists between the Superior Court and this. We have not held that the finding of a trial judge upon the validity of a jury's verdict was binding upon us but we will for ourselves examine the transcript of evidence. If from such examination it appears to us that the determination of the trial judge upon the weight of the evidence is clearly wrong, or that his decision was not made upon conflicting testimony but was based upon a misconception of the evidence in the case we will not approve his decision. In the ordinary case, however, where such justice has approved or set aside a verdict in accordance with his view as to the value of evidence clearly conflicting we will regard such determination as of great persuasive force in appellate proceedings before us.

It was upon the passage of the Court and Practice Act that jurisdiction to consider a motion for new trial after verdict was given to a justice presiding in a jury trial and the right of exception to his decision was conferred. In *Wilcox* v. *R. I. Company*, 29 R. I. 292, after the adoption of the Court and Practice Act, this court first stated definitely the rule which should govern a justice of the Superior Court in passing upon a motion for new trial on the ground that a verdict is contrary to the weight of the evidence. In that case also this court applied the principle that when the evidence before the jury was conflicting, the decision of the trial court in approving or setting aside the jury's verdict should be given great weight in proceedings before us. *Wilcox* v. *R. I. Co.*, was before us upon an exception to the

decision of a Superior Court justice sustaining a jury's verdict; afterwards in *Noland* v. *R. I. Co.*, 30 R. I. 246, and in *McMahon* v. *R. I. Co.*, 32 R. I. 237, the court applied the same principle to the decision of a trial court setting aside the verdict of a jury. In *McMahon* v. *R. I. Co.*, the position of this court was very carefully considered and explained. These cases have been approved and followed in many subsequent cases and must be regarded as declaring the settled rule in this State. In *Wilcox* v. *R. I. Co.*, and in *McMahon* v. *R. I. Co.*, a number of cases were cited from other jurisdictions. It is not, however, upon the authority of the cited cases that the rule in the *Wilcox* and the *McMahon* cases is primarily based but upon an interpretation of the legislative intent, which this court has found in the statutory provisions under which motions for new trial are decided by justices of the Superior Court and exceptions to their decisions are brought before us. Such interpretation however is in accord with the construction which has been placed upon similar statutory provisions by the courts of other American states and by the Federal courts, as appears by the great number of cases cited in the note appended to the report of *McMahon* v. *R. I. Co.*, *supra*, in 25 Ann. Cas. 1226.

In thus giving great force to the determination of a justice of the Superior Court upon the weight of conflicting testimony we cannot with propriety be said to disregard the final revisory and appellate jurisdiction upon all questions of law and equity conferred upon this court by amendment to the constitution. When the evidence before a jury is conflicting upon the issues in a case then a review of the decision of the justice presiding either approving or setting aside the verdict is not a question of law. Such review does not come to us by virtue of the constitutional provision giving to this court final, revisory and appellate jurisdiction upon all questions of law and equity. Our jurisdiction in that regard is entirely statutory. It is conferred as part of the procedure by which a party to a cause may test the validity of a jury's verdict; hence, a consideration of the exclusive

constitutional powers of this court is in no way involved in this question.

We have examined all of the evidence presented at the trial and find that it was conflicting upon the issues in the case. The plaintiff testified that he lighted the lights in the lanterns on either side of his wagon at the time he left his home on the evening in question; that the lights were burning up to the time of the accident, but that the impact of the collision extinguished them and broke the glass in one of the lanterns. In this the plaintiff is corroborated by the testimony of the witness Amoroso who said that just before the accident he was walking upon the side of Elmwood avenue; that the plaintiff passed him about five hundred feet south of the place of the accident and that when he passed the light on the left side of the plaintiff's wagon was lighted. The defendant testified that just before the accident the plaintiff did not display any lights upon his wagon. Upon this point the defendant is directly supported by the testimony of the persons who were with him in the automobile and indirectly by the testimony of a witness who said that after the accident he placed his hand upon the lantern on the side of plaintiff's wagon and said lantern did not feel warm. Upon the question of the condition of the lights in Elmwood avenue at and near the point of collision the defendant testified that the night was dark; that although there was a street light on a pole at the junction of Elmwood and Pawtuxet avenues it did not illuminate the highway at the place of the accident; that just before the collision he saw another automobile approaching from the north and that he and the driver of the other automobile each dimmed their respective lights. To the same effect is the testimony of the three persons who were riding with the defendant. Two witnesses who were in automobiles behind the defendant each testified that there was no moonlight; one said there were very few stars shining, if any, and the other that the night was dark. Opposed to the testimony of the defendant and his witnesses is that of Joseph Amoroso who

said that he carried on the grocery business near the place in question; that he had closed his shop and was walking on the side of Elmwood avenue about five hundred feet south of the junction of Elmwood and Pawtuxet avenues; that he saw the plaintiff approaching in his wagon and that at first the witness thought that the defendant was a friend, but when the witness came nearer to the plaintiff he saw that the plaintiff was unknown to him; that soon after he heard the crash of the collision and ran to the place and recognized the plaintiff as the man who had previously passed him on the avenue; that the place of the accident was not more than twenty-five or thirty feet from the light at said junction and that said light "is a big light, town light—almost every post—that is the light they have"; that he was unacquainted with either plaintiff or defendant. Charles A. Lufkin also testified that he was not acquainted with either plaintiff or defendant; that just after the accident he was crossing the bridge over the Pawtuxet river on Elmwood avenue, about sixteen hundred feet north of the place of accident; that he was proceeding southerly; that the night was pleasant; that he saw the horse of the plaintiff attached to the front wheels of the plaintiff's carriage running toward him. When he first saw the horse it was about four hundred feet from him; that he then hurried to the junction of Elmwood and Pawtuxet avenues and there saw the plaintiff, the defendant and the injured carriage. This witness testified that he resides in the neighborhood of the accident; that he works at a theatre and drives over this road every night. When asked "What is the condition of the place of the accident with regard to lightness or darkness" Mr. Lufkin replied "It was as light as an ordinary street that is lit by electric lights. The lights are there quite thick." At the hearing upon the plaintiff's motion for a new trial upon the claim of newly discovered evidence said justice received and considered the affidavit of John J. Johnson, who affirmed that he lived in the neighborhood of the accident; that on the night in question he was walking along Elmwood avenue

approaching the junction of Pawtuxet avenue; that when a considerable distance away he saw the people about the place of the accident and that "electric lights were burning all along Elmwood avenue making the entire street north and south of Elmwood and Pawtuxet avenues bright and clear. There was one electric light burning brightly directly opposite the place of the collision."

To the defendant's contention that the decision of said justice was against the preponderance of the conflicting evidence it must be said that in the consideration of a motion for new trial as well as in the making of a verdict the weight of evidence does not depend solely upon a computation of the number of witnesses. It depends largely upon the value which should be assigned to the testimony of the witnesses. The justice presiding was in a better position than we are to justly weigh their testimony. He sat in the trial; we have simply the written transcript which may entirely fail to reproduce for us some of the elements which are vital to a just determination in regard to the weight of evidence.

Neither can it be said properly that in setting aside the jury's verdict said justice has usurped the jury's function. By our fundamental law juries are made the triers of fact, and if the evidence upon issues in a case be conflicting it is by the determination of a jury that the facts in the case must ultimately be determined. Upon proceedings for new trial, however, the jury's verdict may be reviewed. Until the passage of the Court and Practice Act in 1905 this court was obliged to pass upon the validity of a verdict with the aid of the transcript of evidence merely. Upon the passage of that act and the establishment of the Superior Court, having exclusive jurisdiction in jury trials, another step was added in the procedure for review, and a litigant defeated before a jury is required first upon a motion for new trial to submit the correctness of the jury's verdict to the judge who presided at the jury trial before such litigant is permitted to seek reversal before us. The justness of the verdict is thus subjected to the scrutiny of a trained jurist

who sat in the atmosphere of the trial, saw and heard the witnesses and from his experience, judgment and impartiality is able to render a decision of great value as to the weight of the evidence. The intervening step in procedure of which we have spoken was not provided without purpose; the legislature did not intend that proceedings for the review of a jury's finding should still come before us for determination upon the transcript alone, but provided that this court should have the benefit of the decision of the trial justice given upon the motion for new trial. In the case at bar said justice in setting aside the verdict did not usurp the function of the jury. The function of a jury is to make a determination of the issues of fact submitted to them. If their finding is not set aside in conformity with due and orderly process of law, such finding becomes the final determination of those issues between the parties. If the evidence is conflicting such issues must finally be decided by a jury. In setting aside a verdict because a trial justice finds that it is unjust he is not attempting to make a final determination of the issues of fact in the case. He is simply applying the check and the regulation which the law has provided with the intent of making trial by jury a more efficient proceeding for the determination of issues of fact, and the doing of justice between litigants. If the decision of the justice setting aside a verdict is approved by this court the issues of fact must again be presented to a jury for determination.

The defendant's exception is overruled and the case is remitted to the Superior Court for a new trial.

VINCENT, J., dissenting. On August 14, 1917, at about ten-thirty o'clock in the evening, the plaintiff was driving a two seated vehicle, commonly called a carryall, upon Elmwood avenue in the direction of Providence and at the time of the accident he had reached a point in the town of Warwick near the intersection of Elmwood avenue and Pawtuxet avenue. He had a load of vegetables which he intended to dispose of in Pawtucket the following morning.

The defendant was driving his automobile in the same direction that the plaintiff was proceeding with his horse and carriage and both were traveling upon their right-hand side of the road. The larger and central portion of the traveled way is madacamized. The macadam however is paralleled upon either side by a narrower strip of "dirt road;" so-called, upon which moving vehicles may safely and properly encroach. At the time of the accident the plaintiff was driving with his right wheels upon the strip of dirt and his left wheels upon the macadam. The defendant was driving his automobile entirely upon the macadamized part of the road and was not therefore as far to the right as the plaintiff. While the plaintiff and the defendant were thus proceeding the latter saw another automobile approaching from the opposite direction with bright headlights. Upon coming nearer the driver of the approaching automobile dimmed his lights, whereupon the defendant did likewise. Almost immediately, and too late to avoid a collision, the defendant discovered the carriage of the plaintiff only a few feet ahead of him. The right-hand end of the fender of the automobile struck the left-hand rear wheel of the carriage.

The case was tried to a jury in the Superior Court. The defendant claimed, and offered testimony to show, that the plaintiff was traveling without any light upon his carriage visible to a person approaching from the rear; that the street was not well lighted at the locus of the accident. That the night was somewhat cloudy and that under the conditions existing he could not have discovered, by reasonable vigilance, the presence of the carriage in time to avoid it.

The questions presented for the consideration of the jury were, (1) Did the plaintiff have any lights upon his carriage and (2), Was the place of the accident sufficiently illuminated to have enabled the defendant, if he had been in the exercise of proper care, to have seen the plaintiff's carriage in time to escape a collision?

The jury rendered a general verdict for the defendant and also found specially that the plaintiff's carriage was without

lights. Upon motion of the plaintiff a new trial was granted by the trial judge and the case is now before this court upon the exception of the defendant to that ruling.

The trial judge, in granting the plaintiff's motion for a new trial, did not file any rescript pointing out his reasons for so doing. The meager endorsement upon the file wrapper indicating that the plaintiff's motion for a new trial had been heard and granted is all that is vouchsafed to us. When the transcript of testimony is turned to and examined with a view to discerning something which might have actuated the trial judge in his decision or at least might explain or account for his attitude upon the motion for a new trial, the difficulty is increased rather than lessened and the effort to discover something in that line fails.

There is much testimony of a substantial character upon which the jury might well find a verdict for the defendant. A number of witnesses for the defendant testified to the effect that the plaintiff did not have any lights upon his carriage and that the light at the place of the accident was barely sufficient to enable a person to see the plaintiff's vehicle a few feet away. It is not too much to say that the preponderance of the testimony upon both questions was in favor of the defendant. The defendant's witnesses appear to have given their testimony in a clear, plain and straightforward manner. The jury had a right to believe them and the verdict shows that they did believe them.

In the case of *Wilcox* v. *The Rhode Island Co.*, 29 R. I. 292, commonly referred to as the *Wilcox* case, this court said in the course of its opinion, referring to *nisi prius* courts, "Those courts ought to independently exercise their power, to grant new trials, and, with entire freedom from the rule which controls appellate tribunals, they ought to grant new trials whenever their superior and more comprehensive judgment teaches them that the verdict of the jury fails to administer substantial justice to the parties in the case."

In view of the *Wilcox* case the majority of this court take the position that it is precluded from any consideration of

or inquiry into the justness of the decision of trial courts in matters of new trial, except when there is found to be an error of law or an absence of any supporting testimony. Accepting, for the sake of the argument, the principle or the practice sought to be established by the above quoted language from the *Wilcox* case, and giving to it all the force and breadth which can be reasonably claimed for it, is this court so bound by it that it cannot, in a case like the present, sustain the exception when no reason appears for the action of the trial court and there is abundant testimony to sustain the verdict of the jury ? I cannot believe that the language in question restricts or should restrict the action of this court to such an extent.

The overruling of the exception in this case is practically saying that the trial judge may, without any discernible reason or upon his mere whim or caprice, grant or deny a motion for a new trial and that this court is powerless to correct the error. It does not seem possible that the court, in announcing its decision in the *Wilcox* case, could have intended to place itself in such a helpless situation. Taking the language of the *Wilcox* case as it stands, it should not, in my opinion, be so construed as to form a barrier beyond which this court cannot go in a case like the present, where the record furnishes no reason for the action of the trial court and the imagination fails to supply one.

Such a construction is *pro tanto* an abrogation of the powers conferred upon this court by our constitution and by our statute. By Section 1, Article of Amendment XII of the Constitution of Rhode Island it is provided that "The supreme court shall have final revisory and appellate jurisdiction upon all questions of law and equity . . . and shall also have such other jurisdiction as may, from time to time, be prescribed by law."

By Section 2 of Chapter 1 of The Court and Practice Act passed at the January Session of the General Assembly, 1905, and now Section 2 of Chapter 272, General Laws of 1909, it is provided that "the supreme court shall have

general supervision of all courts of inferior jurisdiction to correct and prevent errors and abuses therein when no other remedy is expressly provided."

The language of the *Wilcox* case, decided in 1908, so far as it bears upon the point in question, is merely a pronouncement of this court and if it is not possible to give to it a more liberal interpretation, than the majority opinion would seem to indicate, it should be modified to the end that this court may again exercise the power which the constitution and statute confer upon it and which will enable it to deal more satisfactorily with cases like the one at bar.

Looking at the *Wilcox* case and examining the authorities therein cited and upon which it rests, it is found to be destitute of any secure or stable foundation. It will not be disputed that the value of an authority must be determined by taking into account the particular constitution and statutes of the state under which the decision is rendered, and that in another state such authority is worthy of consideration only when, and so far as, the powers conferred by the constitution and statutes of the one State are in harmony with the powers conferred by the constitution and statutes of the other.

The portions of the opinion in the *Wilcox* case which relate to the question now being discussed are founded upon two cases therein cited, *Dewey* v. *The Chicago & N. W. R. R. Co.*, 31 Iowa 373 and *Clark* v. *Great Northern Railway Co. et al.*, 37 Wash. 537. These cases may be conveniently referred to as the Iowa case and the Washington case.

The Washington case closely follows the Iowa case. In neither of these two states does the constitution or the statute confer upon the Supreme Court the broad and explicit powers which are conferred upon our court by our constitution and our statute.

The Constitution of Iowa, Article V, Section 4, provides that, "The supreme court shall have appellate jurisdiction only in cases in chancery and shall constitute a court for the correction of errors at law."

In the Iowa case, decided in 1871, the court cites no authority in support of the rule stated as to the duty of *nisi prius* courts in the matter of motions for new trials. In that case the defendant's motion to set aside the verdict on the ground that the evidence was not sufficient to sustain it was denied by the trial court. In some way it appeared on appeal though in what manner is not disclosed, that the decision of the trial court was based upon the assumption that a new trial would not avail the defendant and that the questions might as well be settled by the Supreme Court under the trial already had. *But nevertheless the Supreme Court examined the testimony, found it insufficient to support the verdict, and reversed the judgment of the court below,* the court including in its opinion the dictum which is now the basis of the *Wilcox* case.

The Constitution of Washington provides that, "The Supreme Court shall have original jurisdiction in habeas corpus, and quo warranto and mandamus as to all state officers, and appellate jurisdiction in all actions and proceedings" and "shall also have power to issue writs of mandamus, review, prohibition, habeas corpus, certiorari, and all other writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction."

In the Washington case the court cites some authorities, in addition to the Iowa case, to the effect that where the trial judge is convinced that the verdict is clearly against the weight of the evidence it is his duty to grant a new trial. Such authorities have no application to a case like the one at bar where it is obvious to anyone that the verdict is not against the weight of the evidence but rather in accordance with it. In the Washington case the lower court had denied the motion for a new trial and the Supreme Court reversed that decision upon two grounds, one of which was that the trial court had *"failed to properly exercise the power and discretion vested in it."*

In *McMahon* v. *The Rhode Island Company,* 32 R. I. 237, decided in 1911, this court followed and approved the doc-

trine proclaimed in the *Wilcox* case and in further support thereof cited the case of *Kansas Pac. R. Co.* v. *Kunkel,* 17 Kan. 172, and quoted from that portion of the opinion of Mr. Justice BREWER in which he distinguished the powers of trial and appellate courts as follows: "The functions of the two are widely dissimilar. The one has the same opportunity as the jury for forming a just estimate of the credence to be placed in the various witnesses, and if it appears to him that the jury have found against the weight of the evidence it is his imperative dury to set the verdict aside. We do not mean that he is to substitute his own judgment in all cases for the judgment of the jury, for it is their province to settle questions of fact; and when the evidence is nearly balanced, or is such that different minds would naturally and fairly come to different conclusions thereon he has no right to disturb the findings of the jury, although his own judgment might incline him the other way."

The language above quoted does not sanction the application of the *Wilcox* case to the case at bar but on the contrary demonstrates the preposterousness of any attempt to so apply it. The language referred to not only protects the verdict of a jury from any interference on the part of the trial court in cases like the one at bar, where there is preponderance of testimony, but it also goes much further and condemns the interposition of the trial court in cases where the evidence is nearly balanced as well as in cases where different minds would *naturally* and *fairly* come to different conclusions.

Our constitution and statute confer upon this court broad and specific powers and impose upon it a definite duty. It is charged with a "general supervision of all courts of inferior jurisdiction to correct and prevent errors and abuses therein." No such ample or comprehensive powers are conferred upon the Supreme Court of either of the States mentioned, by constitution or statute. Therefore, being without any substantial foundation, the authoritative value of the *Wilcox* case becomes insignificant, if it is not wholly lost.

I do not contend that the so-called principle of the *Wilcox* case should not be applied in some cases where the record discloses circumstances warranting its application, but to impute to it an importance sufficient to stifle all freedom of action on the part of this court in cases like the one at bar, in my opinion, amounts to a denial of justice. The defendant's exception should be sustained.

*Jasper Rustigian, Cooney & Cooney,* for plaintiff.
*McGovern & Slattery,* for defendant.