## WILCOX v. WUNDERLICH et al.

Nos. 4456, 4488. Decided August 31, 1928. (272 P. 207.)
Rehearing Denied December 14, 1928.

1

4

6

*Vernon Snyder* and *Willard Hanson,* both of Salt Lake City, for plaintiff.

*King & Schulder* and *Ray Van Cott,* all of Salt Lake, for defendants Wunderlich.

*C. W. Morse* and *M. E. Wilson,* both of Salt Lake City, for defendants Heiner.

STRAUP, J.

This action was brought by plaintiff to recover damages for the wrongful death of his son, 8 years of age, alleged to have been caused by the negligence of the defendants. The case was tried to a jury. At the conclusion of the plaintiff's evidence the court granted a nonsuit as to the Heiners, and

at the conclusion of all the evidence submitted the case to the jury as to the Wunderlichs. A verdict was returned against both of the Wunderlichs, and from the judgment entered thereon both appeal. The plaintiff also appeals from the judgment entered on the nonsuit in favor of the Heiners.

Heretofore, by a divided court, an opinion was rendered, affirming the judgment of the court below. On a petition filed by the Wunderlichs, a rehearing was granted, and the case reargued and resubmitted. The opinions heretofore filed are now withdrawn, and the case determined in accordance with the opinions now filed.

Herman Wunderlich, Sr., and Herman Wunderlich, Jr., are father and son. Herein the former will be referred to as Wunderlich and the latter as Herman. Moroni Heiner and Frank Heiner are father and son. In the complaint it is alleged that at the time of the accident both sons were minors under 16 years of age; that prior thereto their fathers purchased an automobile for the use of the minors, knowing they intended to use it in Salt Lake City, where the accident occurred, and where by an ordinance of the city and by statute it was unlawful for any person under 16 years of age to drive or operate an automobile on any public street or highway, and that they knew the minors drove the car on public streets of the city with the consent and approval of the parents; that the minors "both were and each was inexperienced in the driving of an automobile, and did not understand how to operate or drive an automobile in a careful or prudent manner, all of which was known to the said Herman Wunderlich and the said Moroni Heiner, and both of them"; that at the time of the accident the minors negligently and carelessly, and in violation of law, drove the automobile after dark without any lights on a public street, failed to observe a proper lookout and to sound the horn of the automobile, or give any warning of its approach, and because thereof, "and by reason of the inexperience and lack of knowledge of said minors as to the driving and

operating of an automobile," it was run and operated by them against plaintiff's son, and so injured him that he died three days thereafter. The ordinance also was pleaded, which provided that:

"It shall be unlawful for any person under 16 years of age to operate or drive any vehicle upon any street of Salt Lake City."

Our statute also provides that:

"No person, whether resident or nonresident of this state, under sixteen years of age, shall operate a vehicle or tractor upon any highway of this state." Laws Utah 1921, p. 235.

At the time of the accident Herman was 15 years and 11 months of age. Frank Heiner was about the same age. Each lived with his parents. Wunderlich, in Salt Lake City, owned and operated a service station, selling gasoline, oils, and automobile supplies, and making minor repairs on automobiles. Herman was employed at the station, selling oils and gasoline, greasing cars, and making minor repairs on them. That he was experienced in handing cars, had good knowledge of the mechanism of them, and was an experienced and capable driver, is not disputed. About a month or two prior to the accident, at the request of the boys, Wunderlich sold the car, a used car which he had for sale, to Herman, Frank Heiner, and a young boy named Pinney, all under 16 years of age. Soon thereafter Pinney sold his interest in the car to Herman and Frank. After the car was delivered to the boys, the car was kept part of the time in the garage of Wunderlich at his residence, and part of the time at the garage and residence of Moroni Heiner. The car was used exclusively by Herman and Frank, by one or the other, or by both, solely for their own pleasure, and at no time for the use or benefit of either parent or of his family. The car belonged to the boys, was purchased by them with moneys earned by them, and was solely used by them whenever they desired, without asking permission or consent of their parents or of any one.

Wunderlich testified that, when he sold the car to the boys, he expected they would drive the car whenever and wherever they wanted to use it, and that he had no control over that; that he knew the car was kept at his house part of the time, and part of the time at the house of Moroni Heiner; that he discussed with Moroni Heiner the advisability of taking out liability insurance for the protection of the boys, and that he and Moroni Heiner procured the insurance, each paying one-half of the premium; that the license of the car was taken out by them for the boys in the name of "Frank Heiner & Co."; that, after the car was delivered to the boys, neither he nor Moroni Heiner had anything to do with it, except getting the license and taking out the insurance; and that he saw the boys use the car and drive it on public streets of the city.

Moroni Heiner testified that he was familiar with the purchase of the car, and that it was purchased by the boys about a month before the accident; that he knew they were driving the car on public streets; that the car was kept part of the time at his house and part of the time at Wunderlich's house; and that the car was driven at all times by the boys with his knowledge. He further testified he objected to his son getting the car; that he—

"tried to talk him out of it, but he had his mind set. I did not prevent him from driving it. I did not forbid him any more. He had driven my car when he was out with me."

On the evening of May 13, 1924, the day in question, Herman went to the Heiner home, where the car was. He and Frank took it and drove around town, exclusively for their own pleasure, with two other boys. After driving around a while, and stopping at a store in the southern part of the city, it was discovered that one of the front lights of the automobile "flickered"—did not burn brightly. Herman and Frank between 8 and 9 o'clock, and after dark, started to drive the car to the service station to fix the light; Herman driving the car. They proceeded a short distance north

on the east side of Fifth East street in the city, a paved and much-traveled street, to a point opposite Ramona avenue, running east and west. There is a conflict in the evidence as to whether Frank was with Herman when the car reached Ramona avenue. There is evidence to show that he left the car before they reached that point and went home, leaving Herman to drive the car alone from there to the service station. There, however, also is evidence to show that Frank was in the car with Herman at the time of the accident. When the car reached Ramona avenue, it was stopped by Herman to permit automobiles to pass south along the west side of Fifth East street before he turned west and entered the avenue. Crossing Fifth East street and entering the avenue the car was operated in intermediate gear at a speed of not to exceed 8 or 10 miles an hour. The avenue was a dirt street, except the intersection of the two streets, which was paved. There were paved sidewalks on both streets. At the intersection was a bright arc light, rendering objects and an automobile at and about the intersection about as visible as in the daytime.

As the car crossed Fifth East street and entered the avenue, some boys and girls from 8 to 12 years of age were playing on the west sidewalk of Fifth East street and north of the avenue. Herman, as he approached and drove over the crossing, saw the children playing, but, as he testified, paid no particular attention to them, as he was looking ahead in the direction in which he was driving. The deceased and another boy about the same age were running a "hop-skip" race down the sidewalk on Fifth East street toward the avenue. On reaching the north sidewalk of the avenue, one of the girls of the party caught and "tagged" the deceased's companion.. Another girl attempted to catch and tag the deceased, but he dodged away, ran westerly on the north sidewalk of the avenue, and then into the avenue immediately in front of the moving automobile. He was struck by the car, not on the crossing, but several feet west of it, west of the paved portion. Some of the witnesses

testified that the boy ran immediately in front of the automobile as he left the sidewalk. Others testified that he ran partly across the avenue, and then suddenly turned and ran back immediately in front of the car.

There is a conflict in the evidence as to whether the front lights of the automobile were burning. Some of the witnesses testified that they were not, or, at least, that they saw no lights burning; others, that one light was burning brightly and the other dimly. There also was a conflict in the evidence as to whether the horn of the automobile was sounded as the car approached the crossing and entered the avenue. Some of the witnesses testified that it was sounded; others that it was not, or, at least, that they did not hear any sound of the horn. Witnesses about the crossing and in automobiles on Fifth East street testified that, because of the arc light, objects at and about the crossing were plainly visible, and that they saw the place where the car struck the boy, the part of the car that struck him, and the part, the front wheel, that went over his body, and plainly could see and saw all of the movements of the participants in the transaction. Evidence was also given to show that, as the car approached the crossing, no one was on the crossing or about to pass over it. Herman, in line with other witnesses, testified that the deceased left the sidewalk and suddenly ran in front of the car, under circumstances where he could not avoid striking him. The foregoing is a substance of the evidence bearing on the assignments.

In submitting the case the court charged the jury:

(7) "The plaintiff here seeks to hold Herman Wunderlich liable for the damages which he alleges he suffered, although said defendant did not drive said automobile, and was not present at the time of the driving thereof by his son, Herman Wunderlich, Jr. You are instructed in this connection that, if a minor child resides at the home and is under the control of his father, it is the duty of the latter to restrain such minor child from violating a statute; and if such father either expressly authorizes such child to violate a statute, or if, knowing that such child is violating a statute, he fails to restrain him therefrom, and so impliedly consents thereto, he will be deemed a participant in the

act of such child, and held liable for the consequences thereof, if it is the proximate cause of injury to others."

(8) "You are instructed that, in order to hold the defendant Herman Wunderlich liable upon the theory stated in the preceding instruction, it must appear from the evidence and by a preponderance thereof that he expressly or impliedly consented to his son's act of driving the car on the occasion when said James Wilcox was injured. It is not sufficient that the defendant Herman Wunderlich furnished said automobile to his son, Herman Wunderlich, Jr., for use upon the public highways of Salt Lake City and this state, or that he knew that the said son intended it for such use and had so used the same; but, if you find that said defendant did not expressly authorize his son Herman Wunderlich, Jr., to drive said automobile on the occasion in question, the foregoing are facts from which you may infer such authority."

(9) "It is undisputed in this case that at the time of the accident in question the defendant Herman Wunderlich, Jr., was of the age of 15 years, and that in driving said automobile on said occasion he was violating an ordinance of Salt Lake City and a statute of this state providing that no person under 16 years of age shall operate a vehicle upon any highway of said city and state; and you are instructed that, if said Herman Wunderlich consented to the said act of driving said automobile by his son, Herman Wunderlich, Jr., and if Herman Wunderlich, Jr., was guilty of any negligence as alleged in this complaint at the time of the accident in question, which proximately contributed to the injuries of the said James Wilcox, then the said Herman Wunderlich would be liable for the same, and, in case your verdict is in favor of the plaintiff, you will return a verdict against both of said defendants."

These are assigned as error.

It is contended by Wunderlich, Jr., that the evidence was insufficient to justify a submission of the case to the jury, for the stated reasons that (1) the deceased, engrossed at play, and leaving the sidewalk, and suddenly running in front of the automobile, rendered him guilty of negligence, or the accident unavoidable; (2) that the place of the accident, because of the arc light, was so well lighted and objects so readily visible that the presence of proper lights on the automobile would not have rendered it more visible, as the deceased left the sidewalk and ran into the street, and, because engrossed in play, a sounding of the horn of the

automobile as it approached the crossing would not have changed his course, leaving the sidewalk and running into the street, and that hence the failure of lights or to sound the horn was not the proximate cause of the injury; and (3) as there was no evidence to show that the car was mismanaged, or mishandled, or improperly operated or not under proper control, the fact that Herman was under 16 years of age, also, was not the proximate cause of the injury.

The same contentions are made by Wunderlich, Sr. He, however, further contends that, though the evidence be considered sufficient to show negligence on the part of Herman in one or more of the particulars stated, yet, under the law applicable in such case, the evidence is insufficient to render Wunderlich responsible for such negligence, and that hence the case on his separate motion ought to have been withheld from the jury, and, further, though it be held that the court did not err in not withholding the case from the jury as to him, yet the court, in submitting it, committed prejudicial error by misdirecting the jury as to the law, and in stating to them erroneous principles on the subject of his liability.

On the former hearing we all were of the opinion, though the conclusion was reached from different viewpoints and on different grounds, that the nonsuit as to Moroni and Frank Heiner was properly granted. No petition for a rehearing was filed by any one as to that part of our opinion affirming the judgment of the court below in such particular. Because thereof we may regard the judgment of nonsuit as to the Heiners at rest, especially since a judgment of nonsuit is not a bar on merits.

On the former hearing we all were also of the opinion that Wunderlich, Jr., being under 16 years of age, and because thereof forbidden by ordinance and by statute to drive or operate an automobile on a public street or highway, was at the time of the accident unlawfully driving the car, and that such violation constituted negligence per se. We are all still of that opinion.

We also were of the opinion that there was sufficient evidence in the record, though in conflict, to show that Wunderlich, Jr., at the time of the accident, drove and operated the car without sufficient or proper lights, and without sounding the horn of the automobile, or otherwise giving warning of its approach, and that the evidence is sufficient to justify a finding that he was guilty of negligence in such particulars. We all are still of that opinion.

On the former hearing we were divided, and still are divided, as to whether the evidence is sufficient to justify a finding that the driving of the car by Herman, because under the prescribed age and in violation of law, or his failure to sound the horn, or having the car equipped with proper and sufficient lights, was the proximate cause of the injury. Of course, it is clear that actionable negligence may not be predicated on a failure to have lights, or to sound the horn, or to drive a car in violation of an ordinance or statute, unless such unlawful or negligent acts, or some of them, constitute the proximate cause of the injury. That Herman was a capable and experienced driver in fact, and well understood the mechanism and handling of a car, and that the car at the time of the accident was operated in intermediate gear and at a slow speed, and was under proper control, and that the accident was not due to any inability in handling the car, or to any mismanagement of it, is on the record not disputed.

While such matters are not controlling in determining whether Herman was in law a competent or qualified driver, or whether he, because under age, was driving the car in violation of law (for a person driving a car under the prescribed age would be guilty of violating the law, and such unlawful act negligence per se, notwithstanding, he was capable and skillful in fact in handling and managing a car), yet such matters, in my judgment, have much to do with, and are of importance in, determining the question of whether such violation was or was not the proximate cause of the injury. Because of the undisputed facts, it seems to

me that Herman being under the prescribed age in no sense constituted the proximate cause of the injury, any more than had one over 16 years of age, with similar experience and skill, been driving the car under the same circumstances.

In this connection, let it also be observed that the complaint proceeds on the theory that Herman was not only under the prescribed age, but that he was "inexperienced in the driving of an automobile, and did not understand how to operate and drive an automobile in a careful or prudent manner," which latter allegation was inserted by way of amendment to the complaint, after a demurrer had been interposed to it. No evidence was given to support the amendment. On the contrary, evidence was given to show without dispute that Herman, though under the prescribed age, was an experienced and capable driver.

Now, as to the other alleged acts of negligence. That the place where the accident occurred was so well lighted by an arc light that objects and a car at and about the crossing were about as visible as in the daytime is on the record also not disputed. I thus do not see wherein the presence of proper lights on the car would better have disclosed the presence of it, or otherwise would have influenced the movements of the deceased. If the car in plain-view, moving slowly and directly in front of him, was not seen or discovered by him, it is difficult to understand how proper or sufficient lights on the car would have aided such discovery, or influenced his conduct or movements, or avoided his suddenly running in front of it. I think that to a large extent also true as to the failure to sound the horn.

When the car approached and entered the crossing, there was no one passing the crossing, nor any indication that any one was about to do so. The deceased left the sidewalk and ran across the street, not at the crossing, but a short distance to the west of it, and after the car had passed the crossing.

Under all the circumstances, I thus am of the opinion that the case is within the rule stated in the following cases,

where the alleged negligence was held not to be the proximate cause of the injury: *Zoltoviski* v. *Gzella,* 159 Mich. 620, 124 N. W. 527, 26 L. R. A. (N. S.) 436, 134 Am. St. Rep. 752; *Jones* v. *Wiese,* 88 Wash. 356, 153 P. 330; *Henderson* v. *Detroit Citizens' St. R. Co.,* 116 Mich. 368, 74 N. W. 525; *Wren* v. *Suburban Motor Tr. Co.* (Mo. App.) 241 S. W. 464; *Turner* v. *Bennett,* 161 Iowa 379, 142 N. W. 999; *Surmeian* v. *Simons,* 42 R. I. 334, 107 A. 229; *Ireson* v. *Cunningham,* 90 N. J. Law, 690, 101 A. 49; *Carlton* v. *Boudar,* 118 Va. 521, 88 S. E. 178, 4 A. L. R. 1480; *Pratt* v. *Utah L. & P. Co.,* 38 Utah 500, 113 P. 1032; Berry on Automobiles (5th Ed.) § 190.

The evidence showing that the car being jointly owned by the two minors, that they used it jointly, that the one drove it on some occasions and the other on other occasions, that on the night in question they were jointly using the car for the joint pleasure and purpose of both, that when the lights of the car were found to be defective both acquiesced and participated in the car being driven to a service station to remedy the defect, that there being evidence to show that at the time of the accident both were in the car and participating in the joint purpose of driving and operating the car to the service station, each with equal right and opportunity to direct and control the car for such purpose, I do not see any substantial difference as to the question of liability of the two minors, nor on the record, any substantial difference as to the question of liability of Wunderlich and Heiner, Sr. Thus, if the nonsuit was properly granted as to the Heiners, as I think it was, I think it also ought to have been granted as to the Wunderlichs.

Though it be assumed that the case was properly submitted to the jury as to Herman, nevertheless I think the evidence insufficient to justify a submission of it as to Wunderlich. There are several fundamental principles with which we all agree. One is that a parent is not liable for the negligence or tortious act of his minor child merely by reason of the relation existing be-

tween them, and that as a general rule such doctrine is applicable in actions for negligence against the parent to recover for an injury resulting from the operation of the parent's car by his minor child (*Parker* v. *Wilson*, 179 Ala. 361, 60 So. 150, 43 L. R. A. [N. S.] 87; *Smith* v. *Jordan*, 211 Mass. 269, 97 N. E. 761; *McFarlane* v. *Winters*, 47 Utah 598, 155 P. 437, L. R. A. 1916D, 618, but that the minor may become a servant or agent of the parent, whereby the parent, on the theory of master and servant, or on the doctrine of respondeat superior, may become liable when the automobile is operated within the scope or in the course of the employment and in pursuit of the parent's business. We are all agreed that the liability of Wunderlich cannot rest on such doctrine, for the reason that there is no evidence to show that Herman in any sense was the agent or servant of his father, or that he used the car in the course of any employment or in pursuit of any business or purpose of Wunderlich. If, therefore, Wunderlich is to be held liable, his liability must rest upon another or different theory or doctrine.

It is urged that such liability rests on the fact that Wunderlich sold the car to the boys, knowing they were under the prescribed age, and that they intended to use and drive the car on public streets and highways, and knew they so used and drove it, and made no objection thereto, and did not do anything to prevent their doing so. It is contended such facts bring the case within the rule stated in Berry on Automobiles (5th Ed.) § 1197, that, if *an owner of an automobile* intrusts his car to a child of tender years, or to one known to be incompetent and incapable of properly driving it, and that the probable consequence is that the person to whom the car is intrusted will injure others in the operation of it, the owner will be held liable for the damage done, on the theory that his negligence in intrusting the car and that of the driver combined and together constituted the proximate cause of the injury.

On the same theory it is urged that, where the owner in-

trusts his car to a minor known to be under the prescribed age, where by ordinance or statute such a person is forbidden to drive a car on public streets or highways, the owner will be held liable, regardless of whether the minor was or was not a capable driver in fact, because of the conclusive presumption, created by the ordinance or statute, that such a person is an incompetent driver. The cases cited by the author proceed on the theory that, while an automobile is not of itself a dangerous instrumentality, such as firearms or explosives, yet it become a dangerous instrumentality in the hands of an incompetent or inexperienced driver; and *if the owner of an automobile and having control over it* intrusts it to another, to be by him driven and operated on a public street, who because of inexperience, or of some mental or physical infirmity or disability, known to the owner, is not capable of safely driving or operating the car, the owner is required to anticipate, or ought to anticipate, that so intrusting the car for such purpose to such other that injury to others may likely result because of such inexperience, infirmity, or inability to properly operate the car.

I am in accord with such principles, when properly applied, and when the injury is the result of such incompetency or inability. But the car here was not intrusted under such circumstances *by an owner.* True, it was sold to the boys under 16 years of age by Wunderlich; but it was not unlawful for him or for any vendor to sell a car to a minor or to one under 16 years of age, though he knew the minor intended to drive or operate the car on public streets or highways. Our statute in such respect must not be confused with statutes of other jurisdictions. The ordinance and statute here merely declare it to be unlawful for any person under 16 years of age to drive or operate a vehicle, which, of course, includes an automobile, on a public street or highway. By some statutes, in some jurisdictions, it, in addition thereto, is declared that it also is unlawful for a dealer or any one to sell an automobile or a motorcycle to a

minor under the prescribed age, and also that a parent, guardian or custodian is guilty of a misdemeanor, or civilly liable, who permits a minor under the prescribed age in his charge and control to drive or operate an automobile or motorcycle on a public street or highway. Some of the cases where vendors or parents or guardians were so held liable were influenced by such statutes.

The effect and scope of a statute of that kind may not be read into our statute. Under our statute it is just as lawful to sell a car to a person under the prescribed age as it is to sell it to one over the prescribed age, or to an adult, though known to be without experience in driving a car and wanting in knowledge and ability to properly run and operate it. The sale of the car by Wunderlich to the boys was not illegal or forbidden, any more so than had a dealer or another sold the car to the boys, knowing they were under the prescribed age. Section 3956, Comp. Laws Utah 1917. Selling an automobile to a minor is not like selling firearms, explosives, or poison to a minor, knowing that, becouse of inexperience or want of knowledge of the minor, injury is likely to result, either to himself or to others by his use of them. Such things are in themselves considered dangerous. An automobile, by the courts generally, is not so classified or regarded. It is not so classified and regarded by this court. *McFarlane* v. *Winters,* supra.

When the car was sold and delivered to the boys they, though minors, *had the absolute control and direction over it.* They could sell, lease, or dispose of it with or without the consent of their parents. Except as the ordinance or statute forbade them, they had the legal right to use and drive the car as they saw fit. Their right so to do did not depend upon the consent of the parents, but upon the provisions of the ordinance and of the statute. Under our statute, because the boys, under the prescribed age, used and drove the car on public streets, in violation thereof, merely with the knowledge and without objection on the part of the parents, did not render the parents particeps

criminis or guilty of a misdemeanor. To say that they in such case nevertheless became civilly liable is in effect to say parents are liable for the tortious and unlawful acts of their minor children.

We are all agreed that parents are not so liable, unless by participation they themselves become principals or parties to the commission of the acts. But, in the absence of a statute, mere acquiescence is not sufficient to characterize them participants or principals. I thus am of the opinion that the case does not fall within the rule stated by Berry, supra, where *an owner having control of a car*, intrusts it to another, to be driven by him on a public street or highway and known to be incompetent or incapable of handling or driving it. Except in cases where statutes make a parent liable who merely permits or consents to his minor child under the prescribed age to drive an automobile on a public street, those generally cited by Berry in support of the rule are cases where the owner had control of the car and intrusted it to a minor under the prescribed age, or to another known to be incompetent or incapable of properly handling or managing it, and many of them are cases disposed of on demurrer to the complaint, where, as here, it was averred that the minor to whom the car was intrusted was not only under the prescribed age, but also that he in fact was inexperienced and wanting in knowledge and ability to properly handle and manage an automobile.

At first blush it may seem there is no substantial difference as to liability when a parent intrusts his own car to a minor under the prescribed age, and, when he permits or consents to the minor driving or operating his (the minor's) own car. But in law a legal distinction is quite apparent. In the one the parent has the absolute control of the car; in the other, he has not. In law a minor may buy, sell, use, operate, or control property, regardless of his parent's wish or consent, and whatever disability or restriction is placed on him in such particular is, in this jurisdiction, in no sense dependent upon the authority, wish, or consent of the parent.

Though the case be regarded as analogous to the class of cases cited by Berry and to be governed by the same principles, yet I am of the opinion that the evidence is insufficient to justify a finding that the unlawful driving of the car by Herman, because he was under the prescribed age, was the proximate cause of the injury. That his doing so was negligence per se on his part may well be conceded. Yet in view of the undisputed evidence that the car in intermediate gear was operated slowly, and under proper control, and in no sense mismanaged or mishandled, I do not see any causal connection between the fact that Herman was under the perscribed age and the injury. That Herman was an inexperienced driver, or did not understand how to handle or drive a car, or that the car in any particular was mismanaged by him, rests entirely upon allegations, and not on proof. Nor is there any evidence to justify a finding or conclusion that the failure to sound the horn, or the omission to have lights, or proper lights, on the car, was attributable to inexperience, or want of knowledge in handling or operating or driving a car, or that such facts in any particular resulted from inexperience, or want of knowledge, or inability of Herman in handling or driving the car. In other words, the failure to sound the horn, and the omission to have lights, or proper lights, on the car, though negligence, was negligence wholly separate and apart from, and in no particular attributable to, or the result of, inexperience, or want of knowledge, or understanding, on the part of Herman to operate, handle, or manage a car.

Further, though it be assumed that Wunderlich was guilty of negligence in selling the car to the boys, knowing they were under the prescribed age, and that they intended to drive the car on public streets, yet, to be actionable, such negligence must have been the proximate cause of the injury. As was said in *Stone* v. *Railroad*, 32 Utah 185, 89 P. 715, it may also here be said that:

"The defendant is not responsible for the results of negligence, except such as are natural, proximate, and direct. The general test as

to whether negligence is a proximate cause of the accident is said to be whether it is such that a person of ordinary intelligence should have foreseen that an accident was liable to be produced thereby. But the test of liability is not whether, by the exercise of ordinary prudence, the defendant could or could not have foreseen the precise form in which the injury actually resulted, but he must be held for anything which, after the injury is complete, appears to have been a natural and probable consequence of his act. If the act is one which the party, in the exercise of ordinary care, could have anticipated as likely to result in injury, then he is liable for any injury actually resulting from it, although he could not have anticipated the particular injury which did occur."

In 22 R. C. L. 120, the proposition is stated that, to be the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or the wrongful act, *and that it was such as might or ought to have been foreseen in the light of the attending circumstances,* and that an injury which could not have been foreseen or reasonably anticipated as the probable result of an act of negligence is not actionable; that such an act is but the remote cause, or no cause, of the injury. In the absence of a statute, where a parent or an owner was held liable who had intrusted his car to a minor under a prescribed age, to be operated on a public street, it will be seen, in most of such cases, the minor was not only under the prescribed age, but also was inexperienced and not capable of properly handling a car. It is on that theory the complaint here proceeds. But, as has been seen, the evidence without dispute shows Herman was a capable and experienced driver and well understood the mechanism and handling of a car. In view of such undisputed proof, Wunderlich, by permitting, or not objecting to, Herman driving the car on public streets, had no more reason to anticipate injury to others, than by permitting, or not objecting to, another over 16 years of age, with the same or no more experience and ability to drive and operate a car than Herman possessed. Ordinarily the question of proximate cause is one of fact for a jury, but on the undisputed evidence the

case here is, in my judgment, within the rule stated in *Anderson* v. *Bransford*, 39 Utah 256, 116 P. 1023, where the question was held to be one of law.

This brings us to the charge complained of. In paragraph 7 the court charged that, if a minor child resides at the home and is under the control of his father, it is the duty of the latter to restrain the minor from violating a statute; and if the father either expressly authorizes the minor to violate the statute, *or knowing that the minor is violating it and fails to restrain him therefrom,* he impliedly consents thereto, and is deemed a participant in the act of such child and held liable for the consequences thereof. The charge is so worded that it is not only the duty of a parent to use reasonable care and make reasonable efforts to restrain the minor but that he is in duty bound to restrain him. The charge makes the duty of restraint imperative and unconditional. The court then charged that, if the parent, knowing that a minor is violating a statute, fails to restrain him, such failure impliedly is a consent of the parent and *makes him a participant in the violation of the statute,* and liable for all consequences thereof. No authority under a statute such as ours, holding any such doctrine, has been submitted to us. A statement that a parent, knowing his minor child is violating a statute, does not restrain him, does not prevent him, is himself a participant and a principal in the unlawful act is, in effect, to make a parent liable for the tortious and unlawful acts of his minor child. I think the court confused our statute with those where a parent is made liable who suffers or permits a minor under the prescribed age to drive or operate an automobile on public streets or highways. But the charge goes even further than that, for it declares a parent liable, if he knows the minor is driving or operating a car on public streets and fails to restrain him, regardless of whether the parent did or did not permit it, or consent thereto, and regardless of whether he did or did not make reasonable efforts to restrain the minor.

We are all agreed that the charge is erroneous. We disagree as to its prejudicial effect. I think it was not only erroneous, but prejudicial. When error is shown which in its nature is calculated or has the tendency to do harm, prejudice will be presumed, until by the record it is shown the erroneous ruling did not do harm. By this charge the jury were given a wrong principle of law, and were misdirected as to the law. The jury was required to follow the law as so given by the court, and it must be presumed they did so. The court in effect having charged Wunderlich was in duty bound to restrain Herman from violating the statute, and the evidence showing without dispute that he knew Herman was driving the car on public streets and failed to restrain him, the jury, under the charge, were bound to hold Wunderlich liable for all consequences resulting therefrom, regardless of any and all questions of care or negligence on his part.

Since there was no dispute in the evidence that Herman was under the prescribed age, and thus by ordinance and the statute forbidden to drive a car on public streets and highways, that Wunderlich knew Herman was under the prescribed age, and failed to restrain him, the charge was tantamount to directing a verdict in favor of the plaintiff and against Wunderlich. In other words, the question is reduced to the proposition that, if a parent knows his minor child is driving a car on a public street or highway, and *does not restrain him*—if he fails to restrain him— the parent becomes a participant in the act, and liable for all consequences thereof, regardless of any and all questions of care on his part. That such a charge, under the authorities, is not only erroneous, but also highly prejudicial, seems clear, because the jury as to Wunderlich were misdirected as to the law respecting the very basis of his liability.

Though the court in other portions of the charge had correctly stated the law on the subject, the erroneous charge nevertheless would be prejudicial, for it cannot be ascertained whether the jury, in rendering the verdict against

Wunderlich, followed the one, or the other. Much less may it be asserted that the erroneous charge was harmless, for the reason that there was sufficient evidence to justify a verdict against Wunderlich. That but involves the proposition that a charge misdirecting the jury as to the law with respect to a material issue or legal principle is harmless, if there be sufficient evidence to justify a verdict against the party complaining. Such a claim rests upon the groundless assumption that the jury, in rendering the verdict, disregarded the erroneous charge, or were not influenced thereby, and rendered the verdict upon their own notion as to the law.

Paragraphs 8 and 9 of the charge seemingly proceed on a different theory than that of paragraph 7. The controlling thought of paragraph 7 is that a parent must restrain his minor child from violating a statute, and if he knows the child is violating it, and the parent does not restrain him, the parent is a participant and liable. In paragraph 8 the controlling thought of liability is put on the ground of consent and authority, whether Wunderlich consented to or authorized Herman to drive the car "on the occasion of the accident." In paragraph 9 the liability is put on the sole ground of consent, whether Wunderlich consented to Herman driving the car on a public street or highway, and, if so, then Wunderlich was liable, if Herman was guilty of any of the acts of negligence alleged in the complaint which "proximately contributed to the injuries."

Here again the court confused our statute with statutes of other jurisdictions, where a dealer, vendor, parent, or guardian is rendered liable if he sells a car to a minor under the prescribed age, or permits or consents to his driving a car on a public street. Under our statute, a parent who merely permits or consents or yields to a minor under the prescribed age to drive his own car for his own use and pleasure does not, because alone of that, become a participant in the act, in the sense that he, equally with the minor, becomes responsible for all the consequences thereof, and

certainly not for an accident or injury not directly attributable thereto.

As heretofore stated, I readily enough yield to the proposition that, if an owner having control of the car intrusts it to a minor under the prescribed age, who by ordinance or statute is forbidden to drive a car, or to one who is known to be inexperienced or infirm, or otherwise under disability, and for such reason either not legally qualified or able to properly drive a car, and the parent or owner could or ought to anticipate that so intrusting the car to be driven on a public street likely would result in injury to others, and if in such case an injury results to another, due directly to such disability either in law or in fact, the owner may well be held liable, on the theory that his negligence in so intrusting the car, combining with that of the person to whom the car was intrusted, together constitute the proximate cause of the injury. If, however, the injury in no sense is attributabe to the disability or disqualification of the driver, but to some act or conduct on his part separate and apart therefrom, I do not see wherein the negligence of the one concurs or combines with that of the other. In such case, to say the accident would not have happened, had the parent not intrusted the car to the minor, is but to confuse remote cause with that of direct cause. As I view it, the case is not within the rule stated by Berry, and certain it is that the charge complained of is far beyond it.

Let us look further to paragrph 9. Thereunder Wunderlich is made liable if the negligence of Herman but "proximately contributed to the injuries." That, is to say, if Herman was negligent, and if the deceased was negligent —whose negligence also was submitted to the jury—and though the jury found the negligence of both "contributed" to the injury, still, under the charge, Wunderlich could be held liable. I think the charge also wrong and prejudicial in such respect. .

Thus, for the reasons stated, I am of the opinion that the judgment of the court below as to both of the Wunderlichs

should be reversed, and the cause as to them remanded for a new trial, and that the judgment of the court below should be affirmed as to the Heiners. However, since two other members of the court, for the reasons stated by them in separate opinions, are of the opinion that the judgment should be reversed, and the cause remanded for a new trial only as to Wunderlich, Sr., and two other members that the judgment as to both Wunderlichs should be affirmed, and all of the members of the court being of the opinion that the judgment should be affirmed as to the Heiners, the order of this court is that the judgment only as to Wunderlich, Sr., is reversed, and the cause as to him remanded for a new trial. As to all of the other defendants, the judgment of the court below is affirmed.

The plaintiff is given his costs as against Wunderlich, Jr. The defendants Heiner are given their costs as against the plaintiff. A majority of the court are of the opinion that Wunderlich, Sr., is not entitled to costs, and hence none are awarded him.

HANSEN, J.

I am of the opinion that the judgment rendered in this action should be affirmed as to the defendants Herman Wunderlich, Jr., Moroni Heiner, and Frank Heiner. In my opinion, the judgment should be reversed as to the defendant Herman Wunderlich, Sr. We are all agreed that, if Wunderlich, Sr., is to be held liable in this action, it is upon the theory that he unlawfully encouraged his son while under 16 years of age to drive the automobile upon the occasion in question. The liability of Wunderlich, Sr., must be based upon an act of commission, and not upon one of omission. If Wunderlich, Sr., is to be held liable in this action, it is because of his own act, and not because of the act of his son.

Under the provisions of Comp. Laws Utah 1917, § 7919, any person who advises and encourages the commission of a crime is guilty of a crime. In my opinion, there is evi-

dence in this case from which a jury might well find that Wunderlich, Sr., was guilty of the unlawful act of encouraging his son Herman to commit the misdemeanor of driving an automobile upon the public streets of Salt Lake City, contrary to law. If Wunderlich, Sr., advised and encouraged his son Herman to drive an automobile on the public streets of Salt Lake City, such act of advice and encouragement was negligence per se. The law is well settled that the risk assumed in the performance of an unlawful act is no greater than that assumed in the performance of a negligent act. In 22 R. C. L., § 91, P. 206, the law is thus stated:

"The modern rule is that, while the violation of a statute is negligence, yet to entitle the plaintiff seeking to recover damages for an injury sustained, he must show a causal connection between the injury received and the disregard of the statutory prohibition or mandate— that the injury was the proximate result."

It is so well established in our law as to be axiomatic that, before one can be held liable for his negligent or wrongful acts, it must appear that the negligent or wrongful act, when not amounting to a wanton wrong, was the proximate cause, or an efficient, proximate, contributing cause, of the injury complained of. In order that the act may be a legal proximate cause, it must appear that the injury was the natural and probable consequence of the negligent act. Expressed in different language, it must appear that the act complained of, either immediately or by setting other events in motion in a natural and continuous sequence, produced the injury, or contributed to the injury, and without which the result would not have occurred, and also that the injury ought to have been foreseen by the wrongdoer, although not in the precise form that it occurred. When there is a wanton wrong, it is not necessary to establish these elements of proximate cause, but in this case there is no evidence, nor is it contended, that Wunderlich, Sr., was guilty of an act amounting to a wanton wrong; that is, a wrong necessarily calculated to injure some one.

Another rule of law almost equally well established is that,

so long as the evidence received in a given case is such that fair-minded men might honestly differ about the facts, or differ about the inferences to be drawn from such facts, the jury, and not the judge, is to determine the facts. That which is a proximate cause, or a proximate contributing cause, is, of course, an ultimate fact to be determined from the evidence. In this case, one of my Associates does "not see any causal connection between the fact that Herman was under the prescribed age and the injury." My other Associates seem to take the view that, if Wunderlich, Jr., is liable for the death of the Wilcox boy, then the causal connection between the age of Wunderlich, Jr., and the injury is so clear that, as a matter of law, Wunderlich, Sr., is likewise liable. These divergent views should be a convincing argument with my Associates that fair-minded men might and do differ about the causal connection between the age of Wunderlich, Jr., and the acts which caused the death of the Wilcox boy, and hence a question to be submitted to and determined by a jury.

In the case of *Collins* v. *Liddle,* 67 Utah, 242, 247 P. 476, this court had occasion to consider the effect to be given our statute which prohibits one under 16 years of age from operating an automobile on the public streets. It is there held that the fact that the driver of the automobile is under the age of 16 years could, in a proper case, be material and proper for the jury to consider, under proper instructions in arriving at their verdict. Under the rule announced by a majority of this court in this opinion, the jury may not consider the fact that Herman Wunderlich, Jr., was under 16 years of age in arriving at their verdict as to Wunderlich, Sr. If the negligence of Wunderlich, Jr., was the proximate cause of the death of the Wilcox boy, and if Wunderlich, Sr. encouraged his son to drive the car on the occasion in question, then as a matter of law, the father is liable. I am unable to agree that such is the law. Logically, under such a rule, the father is precluded from showing that his son was a competent and careful driver.

As affecting the question of the unlawful or negligent act of the father in encouraging his son to drive an automobile on the public streets of this state, I readily concede that the ability of the son to drive the automobile is immaterial. The Legislature has settled that question beyond controversy. But as affecting the question of proximate cause—of what Wunderlich, Sr., ought to have foreseen—the ability of Wunderlich, Jr., to operate an automobile is of primary importance. Negligence and proximate cause are separate and distinct ultimate facts, to be established by the plaintiff in an action as a requisite for a recovery. Evdence may be properly received as tending to establish or disprove the one, although it may not be proper as bearing upon the other. The mere fact that an act is unlawful does not make it actionable. Thus it is unlawful in this state to drive an automobile on the public streets without first obtaining a license. Clearly a father would not be liable for the negligence of a son while driving an automobile without license plates merely because the father encouraged his son to drive such automobile upon the public streets of this state. The reason that the father is not liable in such case is because there is no legal causal connection between the unlawful act and any injury that may occur while such a car is being so driven. The injury is not a natural and probable consequence of the unlawful act. Of course there is a distinction between a case where a father encourages a son of lawful age to drive an automobile without a license, and a case where a father encourages his son under the prescribed age to drive an automobile. The two cases are alike, however, in that both acts are unlawful, and hence negligent per se. The two cases are also alike, in that the injury would not have occurred, had not the father encouraged the use of the car, because it may be assumed that, except for the encouragement of the father, the cars would not have been at the place of the injury. The difference lies, if at all, in the probability or improbability of the unlawful act causing the injury.

Civil liability, in the absence of evidence of a wanton wrong, attaches to those consequences, and those consequences only, that are the natural and probable consequence of the wrongful act which a person of average competence and knowledge, being in the situation of the person whose conduct is in question and having the same opportunity to observe, might be expected to foresee as likely to follow such conduct. 22 R. C. L. § 8, P. 121. A concrete illustration will serve to indicate what may be expected under the rule announced by the majority of this court in their opinion. A father has two sons, who borrow his automobile to go on a trip on their own account. One of the sons, A, is more than 16 years of age. The other B, is under 16 years of age. A is such an experienced and careful driver that it is not negligence on the part of the father to permit him to drive the automobile. B is a much more careful and experienced driver than is his brother, A. Under the rule announced by the majority of this court, the father would be held liable for the negligent act of B, if perchance B should be driving the automobile when an injury occurred, but would not be liable for the negligent act of A, if A were driving the car. When called upon to defend himself for the claimed negligent acts of his son B, he would not even be permitted to establish the fact that he had every reason to believe that a proper regard for the civil rights of others demanded that the automobile be driven by the more careful and experienced driver.

I do not believe that such is or should be the law. I am of the opinion that Wunderlich, Sr., can be held liable in this action only after the jury, under proper instructions, shall have found that Wunderlich, Sr., advised and encouraged his son to drive the automobile on the occasion in question, and also that, when Wunderlich, Sr., so encouraged his son to drive the automobile, he (Wunderlich, Sr.) should have foreseen that an injury would probably result; that in determining such question the ability or lack of ability of Wunderlich, Jr., to operate an automobile is a proper matter

of inquiry. Nor does a law prohibiting a person under 16 years of age from driving an automobile on the public streets of this state justify a judicial construction changing the common law which requires a plaintiff to establsh as facts before a jury the elements of proximate cause as a condition precedent to his right of recovery. I agree with Mr. Chief Justice THURMAN and Mr. Justice STRAUP that the giving of instruction No. 7 was prejudicial error, and for that reason the judgment against Herman Wunderlich, Sr., should be reversed, and a new trial granted.

CHERRY, J.

James Wilcox, a boy 8 years of age, was struck and run over by an automobile driven by Herman Wunderlich, Jr., at Salt Lake City, on May 13, 1924, and as a result thereof died three days later. His father, the plaintiff, brought this action against the defendants to recover damages for the death of his son, upon the grounds of alleged negligence. The defendants sued were Herman Wunderlich, Herman Wunderlich, Jr., Moroni Heiner, and Frank Heiner. The case went to trial before a jury. At the close of the plaintiff's evidence a nonsuit was ordered, on their motion, in favor of the defendants Moroni Heiner and Frank Heiner. The case proceeded against the other defendants, resulting in a verdict and judgment in favor of the plaintiff and against Herman Wunderlich and Herman Wunderlich, Jr., for $3,885.55 damages, etc.

There are two appeals. The defendants Herman Wunderlich and Herman Wunderlich, Jr., have appealed from the judgment against them, and the plaintiff has appealed from the judgment of dismissal entered upon the nonsuit in favor of Moroni Heiner and Frank Heiner.

The principal errors assigned and argued in support of the defendant's appeal are that the trial court erred in denying their separate motions for a nonsuit, for a directed verdict, and for a new trial.

The defendants Herman Wunderlich and Herman Wun-

derlich, Jr., are father and son. The son drove the automobile involved in the accident. The father was not present. The action was based upon the theory that the injury complained of resulted from the actual negligence of Wunderlich, Jr., at the time of the accident, and that by reason of other facts to be hereinafter stated Wunderlich, Sr., was connected with and answerable for his son's negligence. It was therefore incumbent upon the plaintiff to establish negligence on the part of Wunderlich, Jr., at the time of the accident, and, in this respect, it is contended the plaintiff failed.

The evidence was conflicting in some respects, but there was substantial evidence which would warrant the jury in finding the facts, as follows: The accident occurred at about 9 o'clock p. m. on May 13, 1924, at the intersection of East Fifth street and Ramona avenue, in Salt Lake City. The automobile was driven north on East Fifth street to the intersection, and then turned west into Ramona avenue by Herman Wunderlich, Jr., who at the time was 2 months under 16 years of age. A statute in force made it unlawful for any person under 16 years of age to drive a motor vehicle upon any public highway. The automobile had no headlights burning. This was in violation of a city ordinance then in force requiring them at that time of day. At the northwest corner of the intersection an elevated electric arc light was burning, which lighted up the vicinity so that passing automobiles could be seen. As he turned into Ramona avenue from the east side of East Fifth street the driver could and did see a group of children playing at the northwest corner of the intersection, some of whom were running. He proceeded, however, without giving any signal of his approach. One of the children, James Wilcox, a boy 8 years of age, ran south along the pedestrian's path or crossing into Ramona avenue, and, either while going south or after he had turned and was going back towards the group of children, and when near the center of the avenue, was struck by the automobile and fatally injured.

It is contended (1) that the evidence does not support the finding of negligence on the part of the driver of the automobile; (2) that his negligence, if any, was not the proximate cause of the injury; and (3) that the injured boy, by suddenly running in front of the automobile, was guilty of such contributory negligence as to preclude a recovery for his death.

The specific acts of negligence pleaded and relied upon by the plaintiff were that the driver, on account of his age, was prohibited by law from driving an automobile upon the streets at all; that the automobile had no headlights burning; that the driver carelessly and negligently failed to keep a proper lookout for persons who might be crossing the avenue, and carelessly and negligently failed to give any warning signal of the approach of the automobile.

There was substantial evidence in support of each of the grounds of negligence, and that such acts constitute legal negligence is too plain for argument. The driving of an automobile on a public street in the nighttime without headlights is negligence itself as a matter of law. *O'Brien* v. *Alston*, 61 Utah 368, 213 P. 791. And it was easily a jury question under all the circumstances whether the driver kept a sufficient lookout for the children there present, or should have given a signal or warning of his approach. See *Herald* v. *Smith*, 56 Utah 304, 190 P. 932; Huddy on Automobiles (5th Ed.) §§ 438, 448; Berry on Automobiles (5th Ed.) § 201.

The question of whether the negligence of the driver was the proximate cause of the accident and injury complained of was also properly submitted to the jury. The contention that the presence of the street light at the place of the accident, which made passing automobiles visible, eliminated defendant's lack of headlights as an efficient causal agency, and that the circumstance of the boy running in front of the automobile was such that the

giving of a warning or keeping a lookout would not have prevented the accident, cannot be sustained. Headlights are required on an automobile at night, not only to enable the driver to see his way, but for the equally important purpose of warning others in its course of its approach; and herein it was for the jury to say whether headlights on the automobile in question, at the time, would have warned the boy of the danger and thus have avoided the accident.

The evidence concerning the manner in which the boy ran in front of the automobile was not, necessarily, that he ran suddenly there without warning to the driver under such circumstances that a collision was unavoidable. There was evidence that two boys were running from some distance towards the street crossing, and that the boy who was injured ran, as some of the witnesses said, into the avenue, turned around, and was returning when he was struck, all of which could have been seen by the driver of the car. It was open to the jury, under the circumstances, to say that, especially when proceeding at night without headlights, reasonable care on the part of the driver required him to sound a warning of his approach and to keep a proper lookout for children crossing the avenue, and that either would have probably prevented the accident, and that therefore the failure to do either was the proximate cause of the accident.

The question of contributory negligence on the part of the injured boy was also for the jury. Under the facts in the case, it could not properly be decided as ■ a matter of law. *Gesas* v. *O. S. L. R. Co.*, 33 Utah 156, 93 P. 274, 13 L. R. A. (N. S.) 1074; *Herald* v. *Smith*, Supra; *Briley* v. *Nussbaum*, 122 Kan. 438, 252 P. 223.

The next question to be considered upon the defendant's appeal is the liability of the defendant Herman Wunderlich, who was not present at the time of the accident. It is contended by his counsel that he is not liable, even ■ though the accident and injury resulted from the negligence of his son, who drove the car. It is undisputed that, about two months before the accident occurred, the

defendant Herman Wunderlich, who was a dealer in automobiles, conditionally sold and delivered to his son, Herman Wunderlich, Jr., whom he knew was under the age of 16 years, and Frank Heiner, who was also under 16 years of age, the automobile afterwards involved in the accident in question, knowing and expecting that they would drive and use it upon the public streets, in violation of law. He also aided in having the car registered and licensed in the name of Frank Heiner & Co. and knew of and consented to his son, Herman Wunderlich, Jr., driving it, both before and on the day of the accident. The boys paid $75 as part payment for the car, and promised to pay the remainder of $75 in installments. The father retained the title to the car, and after the accident took possession of and sold it to another. Whether these facts, in connection with the negligence of the son who drove the car, are sufficient in law to establish liability against the father, and support the judgment against him, is the subject of opposing contentions, and is the question now to be decided.

Parents, as such, are not liable for the torts of their minor children. Some other legal ground is essential to establish their liability. A familiar principle of law, by which liability is made out against them, is the doctrine of agency or master and servant existing between parent and child. The application of this rule is illustrated by many cases, where the wrongful act of the child is connected with the performance of some purpose of business of the parent which the latter has authorized. The "family purpose" doctrine, as applied to the use of automobiles, essentially rests upon this principle. But here we have no such question. It is not claimed, and there is no proof, that Wunderlich, Jr., was engaged in any purpose or business of his father when the accident in question occurred.

The doctrine of liability based upon the relation of master and servant is therefore eliminated from this inquiry. But there is another rule of liability, independent of the doctrine of respondant superior, which arises when one know-

ingly intrusts an automobile to another, though not his agent or servant, who is so incompetent as to the handling of the same as to convert it into a dangerous instrumentality, in which case liability rests upon the combined negligence of the person so intrusting the machine to the incompetent driver and of the driver in its operation. In Berry on Automobiles (5th Ed.) § 1197, P. 884, the rule is thus stated:

"Aside from the relation of master and servant, the owner of an automobile may be rendered liable for injuries inflicted by its operation by one whom he has permitted to drive the same, on the ground that such person, by reason of his want of age or experience, or his physical or mental condition, or his known habit of recklessness, is incompetent to safely operate the machine. An automobile is a machine that is capable of doing great damage, if not carefully handled, and for this reason the owner must use care in allowing others to assume control over it. If he intrusts it to a child of such tender years that the probable consequence is that he will injure others in the operation of the car, or if the person permitted to operate the car is known to be incompetent and incapable of properly running it, although not a child, the owner will be held accountable for the damage done, because his negligence in intrusting the car to an incompetent person is deemed to be the proximate cause of the damage. In such a case of mere permissive use, the liability of the owner would rest, not alone upon the fact of ownership, but upon the combined negligence of the owner and the driver; negligence of the owner in intrusting the machine to an incompetent driver, and of the driver in its operation."

A few of the numerous cases supporting this text are *Gardiner* v. *Solomon,* 200 Ala. 115, 75 So. 621, L. R. A. 1917F, 380; *Elliott* v. *Harding,* 107 Ohio St. 501, 140 N. E. 338, 36 A. L. R. 1128; *Crowell* v. *Duncan,* 145 Va. 489, 134 S. E. 576, 50 A. L. R. 1425; *Rocca* v. *Steinmetz,* 61 Cal. App. 102, 214, P. 257; *Mitchell* v. *Churches,* 119 Wash. 547, 206 P. 6, 36 A. L. R. 1132.

The foregoing authorities relate to instances where the person to whom the machine was intrusted was in fact incompetent to handle it. They are cited to illustrate the general principle of the doctrine under consideration. In

the case at bar the boy was not proved to be in fact an incompetent driver. It was merely proved that he was under 16 years of age and within the prohibition of Comp. Laws Utah 1917, § 3982, as amended by Laws Utah 1921, c. 83, which prohibits persons under 16 years of age from operating such vehicles.

The defendants put in evidence that the boy had worked with and driven automobiles for several years before, and his father gave it as his opinion that the boy was a good, careful driver. But the testimony produced by the plaintiff, which the jury had the right to and evidently did believe, was that on the occasion in question the boy operated the car in a very careless and reckless manner. The competency of a person of prohibited age to drive an automobile is not open to inquiry as a question of fact. Express law determines the incompetency of such persons. A young person may have superior physical skill and ability in operating automobiles, and from lack of that discretion and caution which comes from experience and maturity be a peril on the public highway. It is common knowledge that the thoughtless and daring youth is inclined to "take a chance." He is more likely than maturer persons to drive at night without lights, to neglect sounding his horn when the situation requires it, and to omit looking out for pedestrians. For these and other reasons, the statute prohibits and penalizes the driving of automobiles on the public streets by all persons under 16 years of age.

An automobile in the hands of a competent driver may not be deemed in law an inherently dangerous instrument. But in the hands of an incompetent person it is in fact and in law highly dangerous, and capable of great harm to others. The Legislature by the prohibitory act has in effect declared all persons under 16 years of age to be incompetent and unfit to drive automobiles on public streets. And this is not changed or overthrown in the case of a boy of 15 whose father thinks he is a good careful driver.

A fundamental principle of law of universal recognition is illustrated in Bishop on Noncontract Law, § 151, viz.:

"Loaded firearms are dangerous, if not properly handled. And one is careless who intrusts a loaded gun to a 12-year old child; he should first draw the charge. Therefore, if it goes off in the hands of such child, inflicting harm on another, he must answer for the wrong."

Is it not consistent with this doctrine to say: Automobiles in the hands of incompetent persons on the public streets are highly dangerous. The law prohibits children under 16 years of age from driving automobiles, because they are deemed incompetent to safely operate them. And one is careless who intrusts an automobile to a child of such age; he should respect the law and not do so. Therefore if, through the child's carelessness and negligence in the driving of the automobile, harm is inflicted upon another, he must answer for the wrong. Upon the ground that the prohibitory statute itself amounts to a conclusive declaration that the prohibited person is incompetent and unfit to operate the vehicle, liability is established against one who knowingly intrusts an automobile to one of the prohibited age, without other proof of his incompetency, when injury results from the negligent operation of the automobile by the latter. *Rush* v. *McDonnell*, 214 Ala. 47, 106 So. 175; *Walker* v. *Klopp*, 99 Neb. 794, 157 N. W. 962, L. R. A. 1916E, 1292; *Laubach* v. *Colley*, 283 Pa. 366, 129 A. 88; *Hopkins* v. *Droppers*, 184 Wis. 400, 198 N. W. 738, 36 A. L. R. 1156; *Schultz* v. *Morrison*, 91 Misc. Rep. 248, 154 N. Y. S. 257; *La Rose* v. *Shaughnessy Ice Co.*, 197 App. Div. 821, 189 N. Y. S. 562; *Burrell* v. *Horchem*, 117 Kan. 678, 232 P. 1042; *Repczynski* v. *Mikulak* (Ind. App.) 157 N. E. 464; Berry on Automobiles (5th Ed.) § 1198, p. 886; Huddy on Automobiles (5th Ed.) §662, p. 863.

The claim that the defendant Herman Wunderlich was not at the time of the accident the owner of the car, but had previously sold and delivered it to his son, is not of any

legal significance.  The essence of the negligent act
which makes the father liable is the furnishing and
placing in the hands of the minor the thing which the
law prohibits him from operating, and the legal form of the
transaction is of no consequence.  The law imposes the legal
duty upon every one to not knowingly place an automobile
in the hands of an incompetent person for use upon the
public highway, and this duty is violated by a sale and de-
livery, or a gift, as well as by a loan.

It is argued that it does not appear that the act of the
father in placing the car in the hands of his son was the
proximate cause of the injury complained of.  This presents
no serious difficulty.  The causal connection is sus-
tained, because the father was bound to anticipate
harm to others from the careless handling of the car
by his son, who was by law prohibited on account of his
age from driving the car.  The essence of the doctrine is
that injury to others through the carelessness and incom-
petency of the driver is the probable consequence of placing
an automobile in such hands, and, when such anticipated
carelessness and resulting injury do in fact follow, the rela-
tion of cause and effect between the act of placing the car
in incompetent hands and the injury is sufficiently estab-
lished to constitute the former the legal proximate cause
of the latter.

But it is said that the son had driven cars before without
negligence, and that in his father's opinion he was a good,
careful driver.  The statute, however, in effect declares that
all persons under 16 years of age, no matter what their
fathers may think about it, are incompetent and unfit to
drive automobiles on the public highways.  It may be that
the father did not, in fact, anticipate harm from the son's
driving the car.  But a man is not a law unto himself.  The
law fixes the duty of men, and herein the law, by declaring
the son incompetent, fixed upon his father a duty to not
place a car in his hands.  It seems clear that when this duty
was violated, and the negligence which the law requires to

be anticipated did follow, the father must be held answerable as having proximately caused it.

If A knowingly places an automobile in the hands of a drunken driver for use on the public highway, and injury results to B from the reckless and careless operation of the car by such driver, is it incumbent upon B, in order to recover from A, to prove that the reckless and careless operation of the car occurred solely because the driver was drunk? If so, how would he go about it? Would it avail A to prove that the driver on numerous previous occasions, had safely driven cars when drunk, and that in his opinion he was a good, careful driver, even when he was drunk?

It is certainly a violation of legal duty, and negligence in law, to knowingly place an automobile in the hands of a person to be driven on the public highway, when it is known that all persons of the class to which he belongs, on account of their incompetency as a class, are expressly prohibited from so driving such automobiles. And liability follows from such violation of legal duty and negligence, when the anticipated result occurs, viz. when the driver proves in fact to be careless and harm results to another. In such case the question of whether the carelessness of the driver occurred by reason of his legal incapacity is not a matter of fact depending on proof. It is a deduction of law arising out of the situation. Because such persons are likely to be careless they are prohibited from driving cars at all, and when they do drive cars and prove careless, such carelessness is legally imputable to the disability prescribed by statute.

It follows that liability for the injuries complained of was properly adjudged against both defendants, Herman Wunderlich and Herman Wunderlich, Jr., upon the grounds of their combined negligence. The negligence of the father in wrongfully placing the automobile in the hands of his son, and the negligence of the son in operating it, together and in sequence, made up the proximate cause of the accident, without either of which it would not have occurred.

Other complaints of these appellants relate to supposed errors and conflicts in the instructions to the jury, one only of which deserves notice. The trial court instructed the jury to the effect:

"That if a minor child resides at the home and is under the control of his father, it is the duty of the latter to restrain such minor child from violating a statute, and if such father expressly authorizes such child to violate a statute, or, knowing that he is violating a statute, fails to restrain him therefrom, and so impliedly consents thereto, the father is liable for the consequences thereof, if it is the proximate cause of injury to others."

The complaint is that the instruction is erroneous, because a father is under no active legal duty to restrain his minor child from doing a wrong. A general exception only was taken to the whole instruction. No particular part was pointed out and excepted to as faulty. The whole instruction is not bad, for that part which states that the father is liable if he "expressly authorizes such child to violate a statute" is correct. It is settled by many cases in this court that, unless the whole instruction is bad, a general exception is unavailable to have any particular part reviewed on appeal. *Farnsworth* v. *U. P. Coal Co.*, 32 Utah 112, 89 P. 74; *State* v. *Overson*, 55 Utah 239, 185 P. 364; *Hansen* v. *O. S. L. R. Co.*, 55 Utah 577, 188 P. 852. But, even if the matter was reviewable in this court, the error, for other reasons, must be disregarded. As an abstract proposition, the instruction is in part objectionable and cannot be approved. Liability of a parent for the wrong of his child does not arise because the parent merely fails to restrain the wrong. See *Hopkins* v. *Droppers*, 191 Wis. 334, 210 N. W. 684, 49 A. L. R. 1519. The ground of liability is independent of the relationship, and rests upon affirmative acts, which connect the father with the wrong complained of.

The erroneous instruction, however, was harmless and immaterial in this case. The defendant Wunderlich, Sr., himself admitted that he delivered the automobile in question to his son, knowing that he was of prohibited age, and

that he intended to use it on the public streets in violation of law; that he aided in having the car registered, and knew of and consented to his son's driving it, both before and on the day of the accident. These admitted facts conclusively established the relation of the father to the wrongs complained of, and his liability therefor, so that no question on that point was left for the jury to decide. The giving of the erroneous instruction was, therefore, without prejudice to the defendant.

It is said, however, that the instruction authorized the jury to find a verdict for the plaintiff without a finding of negligence on the part of the driver of the automobile, because nothing is said in the instruction respecting the necessity of negligence to warrant a recovery. The whole of the law of the case need not be stated in one paragraph. In instruction No. 9 the court points out specifically that the liability of Herman Wunderlich, Sr., is dependent upon a finding of negligence by Herman Wunderlich, Jr., which proximately contributed to the injuries complained of, and in instructions Nos. 10 and 11 charges that, before any recovery can be allowed, they must find that Herman Wunderlich, Jr., was guilty of one or more of the specific acts of negligence alleged, specifying them, and that, unless the death of James Wilcox was proximately caused by the negligence of the defendant Herman Wunderlich, Jr., the plaintiff cannot recover, and the verdict must be in favor of the defendants, "No cause of action."

To say that the jury was misled by instruction No. 7 into finding a verdict against Herman Wunderlich, Sr., without regard to negligence on the part of Herman Wunderlich, Jr., is to say that the jury wholly ignored the other parts of the charge, which plainly pointed out that such could not be done. And there is not the slightest ground for such a statement. That the jury did find negligence on the part of Wunderlich, Jr., is attested by the verdict against him. It is a universal rule, repeatedly stated and acted upon by this court, that instructions to juries must be considered and

interpreted as a whole, and it is enough when the entire charge fairly states the law applicable to the case.

Instruction No. 7 is erroneous, because it incorrectly states one feature of the liability of a father for the wrongs of his minor child. As before seen, under the express admissions of fact by the father in this case, that error was harmless and immaterial. But the instruction is not erroneous because it does not contain other conditions of liability, when such conditions are clearly set out in other parts of the charge.

The other objections are formal, and do not involve any substantial right. A careful consideration of the instructions as a whole discloses no serious or prejudicial error respecting the matters complained of.

Plaintiff's appeal from the judgment after nonsuit in favor of defendants Moroni Heiner and Frank Heiner must fail. Moroni Heiner and Frank Heiner are father and son. At the time in controversy Frank Heiner ■ was 15 years of age. Moroni Heiner did nothing to aid or encourage his son in buying the automobile in question, but objected to it. After his objections were unavailing, he, at the request of Wunderlich, Sr., paid half the premium for a liability insurance policy issued to Frank Heiner & Co. upon the automobile. Thereafter he knew that his son was driving the car and did not prevent it. There was no claim that Moroni Heiner had any knowledge that Herman Wunderlich, Jr., was under 16 years of age at the time in question.

With respect to Frank Heiner there was some evidence from which it might be inferred that he was riding in the car at the time of the accident, although the positive and direct evidence was to the contrary. But, if present, there is no claim that he was driving the car, or that any act of his, at the time, contributed to the accident. ■ And there was no evidence that he knew, or had reason to believe, that Herman Wunderlich, Jr., was under 16 years of age.

Because Moroni Heiner did no overt or affirmative act to aid in placing the car in the hands of two boys, but objected to it, and did not know of the nonage or incapacity of Wunderlich, Jr., I think the case fails against him. And liability against Frank Heiner was not established, because he did not personally contribute to the accident at the time by any act of negligence. He could not be held in combination with the negligence of Wunderlich, Jr., the driver, for placing the car in the driver's hands, because it did not appear that he had any knowledge of the latter's age disability; and there could be no liability based upon any agency, or joint venture, or contractual relation between himself and Wunderlich, Jr., for the reason that infants are not liable, directly or indirectly, on their contracts, and liability on this score necessarily involves the recognition of a contract. 31 C. J. 1091; 14 R. C. L. 259-261; *Burns* v. *Smith,* 29 Ind. App. 181, 64 N. E. 94, Am. St. Rep. 268; *Covault* v. *Nevitt,* 157 Wis. 113, 146 N. W. 1115, 51 L. R. A. (N. S.) 1092, Ann. Cas. 1916A, 959.

The trial court did not err in granting the nonsuit in favor of Moroni Heiner and Frank Heiner.

Both judgments appealed from should be affirmed.

GIDEON, J.

I concur in the reasoning of, and in the conclusions reached by, Mr. Justice CHERRY in his opinion. I desire, however, to add the following:

Under the testimony in this record, the findings of the jury that Wunderlich, Jr., was negligent in not having headlights burning at the time of the accident, and in not sounding a warning of his approach as he turned west into Ramona avenue, and that such negligent acts were the proximate cause of the injury, are, in my judgment, conclusive upon this court. Likewise the finding of the jury on the issue of whether the injury was attributable to the negli-

gence of the deceased child. The other or additional facts in issue, that determine the liability or nonliability of Wunderlich, Sr., are not in dispute. It is misdemeanor, under the statutes of this state and the ordinances of Salt Lake City, for any one under the age of 16 years to operate an automobile in the public highways.

It is conceded that Wunderlich, Jr., was within the prohibited age, and that the operation of an automobile on the public streets by him was a misdemeanor. Wunderlich, Sr., frankly stated that he knew the age of his son; that he sold the car to his son and other minors within the prohibited age; that he knew his son was intending to and was operating the car on the public highways of the state, and that he assisted in procuring the state license for the automobile, and also paid part of the accident insurance for the protection of the owners of the automobile in its operation. These facts are nowhere in the record disputed. In view of the findings of the jury as to the negligence of Wunderlich, Jr., and that such was the cause of the injury, and, further, that the injury was not the result of any negligence of the deceased child, and in view of the other undisputed facts, it follows as a matter of law that Wunderlich, Sr., was liable for the injury resulting from the accident.

Let it be conceded that the trial court's instruction No. 7 is erroneous. The instruction had to do with the facts under which Wunderlich, Sr., would be liable for the negligence of Wunderlich, Jr. The testimony of Wunderlich, Sr., is not disputed anywhere in the record. By reason of the findings of the jury and the undisputed testimony of Wunderlich, Sr., he became liable as a matter of law. I am therefore unable to see wherein or whereby this instruction can be held to be so prejudicial as to work a reversal of the judgment.

No complaint is made of the instructions of the court relating to the measure of damages. By reason of the testimony of Wunderlich, Sr., which is in no way disputed, there

were but three issues of fact to be determined by the jury. First, whether Wunderlich, Jr., was negligent; if so, whether such negligence was the proximate cause of the injury. Second, whether the negligence of the deceased child, if any, was the cause of the injury. Third, the amount, if any, of the damages to which plaintiff was entitled. The instruction relied upon for a reversal of the case in no way related to either of these questions.

The rule that should control the liability of Wunderlich, Sr., under the facts appearing in this record, especially in view of the increased use of automobiles on the public highways, is clearly stated by the Supreme Court of Wisconsin in *Hopkins* v. *Droppers*, 184 Wis. 412, 198 N. W. at page 742, 36 A. L. R. 1156, as follows:

"From these averments it appears, among other things, that the defendant father bought and placed in the complete control of his son, whom he knew or ought to have known was an inexperienced driver, for his free use in a crowded city, a machine which, if carelessly managed, might cause serious injury to others, and that by so doing he knowingly countenanced and encouraged his minor son to violate a statute of the state, and that these acts and the negligence of the son were the proximate cause of the injury complained of. The general object of that statute has been already stated. The statute amounts to a legislative .declaration that a minor under 16 years is unfit to drive motor machines on the public streets, unless accompanied by an adult, and a violation of the statute is negligent. When the father authorized this violation of law, he failed in that duty which every good citizen owes to the public. He failed to observe for the safety of other persons that degree of care which the circumstances justly demanded. Although the motorcycle was not in itself a dangerous instrumentality, it was a machine of such a nature that, when negligently driven, it might menace the safety of other persons. This is a well-known fact, and one which in the exercise of ordinary care the father could reasonably anticipate."

I am of the opinion that the judgment should be affirmed.

THURMAN, C. J.

I concur with Mr. Justice CHERRY in his separate opinion in every particular, except as to the effect of the court's

instruction No. 7. It is conceded by all that the instruction was erroneous. I am of opinion it was not only erroneous, but prejudicial. It was clearly a misdirection by the court, and not in harmony with other instructions. The ultimate issue the jury had to determine was the liability of the defendant Herman Wunderlich, Sr., to respond in damages for the consequences of the negligence of his son, Herman Wunderlich, Jr. On this question the jury were instructed, in instruction No. 7, that:

"If a minor child resides at the home and is under the control of his father, it is the duty of the latter to restrain such minor child from violating a statute, and, if such father expressly authorizes such child to violate a statute, or, knowing that he is violating a statute, fails to restrain him therefrom, and so impliedly consents thereto, he will be deemed a participant in the act of such child, and held liable for the consequences thereof, if it is the proximate cause of injury to others."

In the instruction quoted, under the conditions therein mentioned, Wunderlich, Sr., is held responsible for the acts of his son, without regard to whether such acts were negligent or otherwise. In instruction No. 8, instruction No. 7 is referred to as a theory, and the meaning of instruction No. 7 is elaborated and explained. Nowhere in either of these instructions, both of which, taken together, appear to constitute a theory of liability, does it appear that negligence on the part of Herman Wunderlich, Jr., was an essential element. The jury were instructed that under the conditions mentioned it is the duty of a father to restrain his minor child, and if he does not restrain him he will be deemed a participant in the *act* of such child and responsible for the consequences, if it was the proximate cause of injury to others. What act? The mere act of driving on the highway, or such driving coupled with some neglect of duty?

The jury were left to speculate, and that is one of the vices of the instruction. The instruction was not only erroneous in omitting the element of negligence, but misleading in charging that it was the duty of the father to

restrain his minor child. There is no such duty for the purpose of fixing liability, and that is conceded. The instruction being erroneous from beginning to end, and calculated to mislead the jury to the prejudice of Wunderlich, Sr., on the question of his liability, it is not sufficient to say that the error was cured by other instructions. I recognize the rule that instructions must be read and considered as a whole, in order to understand their scope and meaning; but I seriously doubt if that rule should be applied in a case where there is not only the omission of an essential element but in addition thereto a positive prejudicial misdirection as to the duty of one, going to the very question of his liability.

I also appreciate the fact that it is impracticable in many cases to state all of the essential elements in a single instruction. If in such cases the instruction is right as far as it goes, but omits some essential element, such omission is not prejudicial, and, perhaps, not error at all, if other instructions supply the omission. But that is not this case. Under instruction No. 7 the jury were instructed upon a theory, wrong because of prejudicial misdirection, and also wrong in omitting the element of negligence. In other instructions the jury were instructed that negligence was an essential element to establish liability. The evidence as to negligence was in sharp conflict. If the jury were of opinion that two distinct theories of liability were presented by the court—one requiring proof of negligence and the other not—it is conceivable they may have followed the line of least resistance, and given little or no consideration to the question of negligence.

Some contention is also made that, because the evidence was sufficient as to the negligence of Herman Wunderlich, Jr., to sustain the verdict, we are therefore justified in holding that instruction No. 7 was harmless. I cannot agree with that contention. I regard it as fundamentally unsound. If there were no conflict in the evidence as to the question of negligence, so that we could say as matter of

law that negligence had been established, I would then have no difficulty in finding that the instruction was harmless. But no one has contended, nor will contend, under the evidence in this case, that the negligence of Herman Wunderlich, Jr., was so conclusively established as to authorize this court in so holding as matter of law.

Therefore, in view of the fact that instruction No. 7 went directly to the question of the liability of defendant Herman Wunderlich, Sr., with almost the force and effect of a peremptory instruction to find him liable, when there was a sharp conflict in the evidence on the most vital element in the case, I am unable to agree with my associates, who are of opinion that such instruction was harmless.

For such error, and no other reason, in my opinion, Herman Wunderlich, Sr., is entitled to a new trial.

PER CURIAM.  Rehearing denied.

CHERRY and GIDEON, JJ., dissenting.